IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| Robert Carlton Stiles, | ) | |
| | ) | **ORDER ON MOTION TO VACATE,** |
| Petitioner, | ) | **SET ASIDE, OR CORRECT** |
| | ) | **SENTENCE** |
| vs. | ) | |
| | ) | Case No. 3:22-cv-115 |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Case No. 3:19-cr-38 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Robert Carlton Stiles, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Petitioner Robert Carlton Stiles's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 110) and the related motion for hearing and to appoint counsel (Doc. No. 111). The United States opposes both motions. Doc. No. 141; Doc. No. 135. After careful review of the entire record, the motions are denied.

I.     **BACKGROUND**

Stiles pleaded guilty to one count of distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The following facts constituted the factual basis of Stiles's guilty plea.[1] In November 2018, B.K. drove Stiles to Minneapolis so Stiles could purchase heroin. Doc. No. 79 ¶ 5. In exchange for driving him, Stiles provided B.K. with a portion of the

---

[1] Notably, there are separate facts relating to the overdose and death of J.T. that <u>did not</u> form the basis of Stiles's guilty plea but were nevertheless originally charged.

heroin, which B.K. snorted on their return trip. Id. B.K. was impaired from the heroin and could no longer drive, so Stiles drove the rest of the way home. Id. After he took over driving, B.K. overdosed. Id. Subsequent investigations revealed that Stiles had made many trips over several months to pick up heroin and distributed it to other individuals. Doc. No. 126, p. 29; Doc. No. 79 ¶¶ 6-7.

Although Stiles was originally charged by indictment,[2] he and the United States entered into a plea agreement, where he agreed to plead guilty to an information charging him with distribution of a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. On June 1, 2021, Stiles and his attorney appeared for a waiver of indictment and plea hearing. Doc. No. 82. At the hearing, the Court placed Stiles under oath. Doc. No. 126, p. 5. The Court then engaged in a Rule 11 colloquy, and Stiles confirmed that he had had enough time with his attorney, was satisfied with the representation he received, and was ready to proceed with the hearing.[3] Id. at 7. In addressing the waiver of indictment, the Court explained that Stiles was waiving his constitutional right to be charged by a grand jury and that "[i]f you don't waive the Indictment, the government may present the case to a grand jury and ask them to indict you." Id. at 13. Stiles confirmed that he had discussed this with his attorney, understood the consequences of waiving the right to indictment, and specifically understood that "a grand jury may or may not indict" him. Id. at 13-14. Stiles then represented that he wished to waive his right to indictment by

---

[2] The indictment charged Stiles with conspiracy to possess with intent to distribute and distribute controlled substances resulting in death in violation of 21 U.S.C. § 846 and Pinkerton v. United States, 328 U.S. 640 (1946) and distribution of controlled substances resulting in death in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. Doc. No. 2. Both counts charged in the indictment carry a 20-year mandatory minimum. 21 U.S.C. § 841(b)(1)(C). The charges in the now-dismissed indictment related to the overdose death of J.T. Doc. No. 79 ¶ 24.

[3] Assistant Federal Public Defender Christopher J. Lancaster represented Stiles at his waiver and plea hearing and at sentencing.

the grand jury and executed a document to the same. Id. at 14-15. The Court accepted Stiles's waiver and proceeded to the plea agreement. Id. at 15.

In reviewing the plea agreement, the Court informed Stiles of the statutory maximum penalties for the charge of distribution of a controlled substance, which included a maximum sentence of 20 years. Id. at 17. Stiles affirmed that he understood the charges against him and the related penalties. Id. The Court also noted that, pursuant to the plea agreement, the United States would move to dismiss the indictment at sentencing. Id. at 22. After the Court concluded reviewing the other portions of the plea agreement with particularity, Stiles pleaded guilty to the charge in the information. Id. at 27. The United States supplemented the factual basis in the plea agreement, and Stiles's counsel provided several clarifications.[4] Id. at 27-32. The Court found that "Mr. Stiles is aware of the nature of the charges and of the consequence of his plea" and that his "plea is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense that is referred to in the Information." Id. at 32. The Court then accepted Stiles's guilty plea. Id.

At sentencing, Stiles was again placed under oath. Doc. No. 127, p. 3. While under oath, Stiles represented that he had had adequate time with his attorney and was satisfied with his attorney. Id. at 5. The Court reviewed the total offense level, criminal history category, and guideline calculations, to which neither party objected. Id. at 6, 34. The United States recommended a sentence of between 144- and 151-months incarceration (which was at the high end of the guideline range) based on Stiles's pre-sentencing conduct while on release and the 18 U.S.C. § 3553(a) factors. Id. at 6-8. Conversely, Stiles's attorney vigorously argued for a

---

[4] The clarifications largely centered on explaining why the United States moved forward with dismissing the indictment (which brought charges relating to the death of J.T.) and proceeding by information (which did not).

downward variance under 18 U.S.C. § 3553(a) for a sentence of 72 months incarceration. Id. at 11-22. Stiles's attorney also explained how the parties arrived at the plea agreement:

> Now [Stiles] didn't plead guilty to the original charge that was in the Indictment. [J.T.] died as a result of fentanyl poisoning. He didn't die as a result of a heroin overdose. Mr. Shasky and I had long discussions about the factual basis of the case and when [J.T.] died at the time he was in the company of a person by he name of Charles Parker. Now just before then or sometime before then he had obtained -- that's when he obtained some heroin from [Stiles]. Now with Mr. Parker he was there right around a little bit before 4 o'clock. He had used and was demonstrating the fact that he was high at the time that he was high at the time he was with Mr. Parker. Mr. Parker indicated that [J.T] had acted sick for a short period of time but then after coming out of the bathroom and going outside then he seemed to be okay. Sometime after that [J.T] drove down to Sisseton and it was while he was in Sisseton that the fentanyl overdoes occurred.
>
> Now we had our own expert taking a look at this and it was determined by both the original [medical examiner] and our [medical examiner] that this was a case of fentanyl poisoning. However, [J.T] had taken fentanyl up in Wahpeton it is the concerted opinion of our medical examiner there's no way he could have made it to Sisseton and that especially given the levels that were found in his blood. What wasn't found in his bloodwork was heroin because . . . it metabolizes quickly, which would explain why heroin wasn't found in his system but fentanyl was.
>
> Fentanyl metabolizes. It was in large part because of that circumstance that we ended up having the discussions that we had with Mr. Shasky and we resulted in this plea situation that we did.

Id. at 19-20. After Stiles's attorney's presentation, the Court clarified (and the parties agreed) that J.T.'s overdose was not contemplated as relevant conduct to the offense charged in the information, but that there is an "admission that there was distribution of heroin to [J.T.]." Id. at 23. Stiles then gave an allocution. Id. at 25-29.

Next, in reviewing the 18 U.S.C. § 3553(a) factors, the Court explicitly referenced and discussed the relevant conduct in the presentence investigation report involving B.K., his overdose, and Stiles's trips to Minneapolis to purchase heroin. Id. at 35-37. The Court sentenced Stiles to 144 months in prison with three years of supervised release, ordered the $100 special assessment, denied his request for self-surrender, and dismissed the indictment. Id. at 38. The Court advised

Stiles of his right to appeal. Id. at 39. Stiles appealed his sentence to the Eighth Circuit Court of Appeals on July 18, 2022 (Doc. No. 118), but his appeal was dismissed as untimely. Doc. No. 120.

## II.   LEGAL STANDARD

A motion under 28 U.S.C. § 2255 provides avenues for relief "in several circumstances, including cases shown to contain jurisdictional errors, constitutional errors, and errors of law." Raymond v. United States, 933 F.3d 988, 991 (8th Cir. 2019) (citing 28 U.S.C. § 2255(b)). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Fletcher v. United States, 858 F.3d 501, 505 (8th Cir. 2017) (quoting Jennings v. United States, 696 F.3d 759, 762 (8th Cir. 2012)).

The court may dismiss a § 2255 motion without a hearing if "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Tinajero-Ortiz v. United States, 635 F.3d 1100, 1105 (8th Cir. 2011). "The movant bears the burden to prove each ground entitling relief." Golinveaux v. United States, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted). Whether to grant or deny an evidentiary hearing is committed to the discretion of the district court. See id.

## III.   DISCUSSION

In support of his claim for § 2255 relief, Stiles alleges three grounds: (1) "Court failed to conduct any inquiry into defendant's denial of counsel claim;" (2) "Defense Counsel was ineffective when he failed to mount an aggressive adversarial challenge to the government[']s indictment;" and (3) "Defense counsel [was] ineffective where consequences of plea, relevant to decision making process were misrepresented." Doc. No. 110.

### A.     Denial of Counsel Claim

First, Stiles raises the Court's lack of an inquiry into his "denial of counsel claim" as grounds for § 2255 relief, alleging that "Defendant Stiles argues that the Court or Defense Counsel deleted his letter and motion for change of counsel, (see Document # 44 - # 47 on USDC docket) to intentionally deny any inquiry into his denial of counsel claim." Id. at 4.

This ground is without merit. The Court previously addressed this issue (Doc. No. 133), explaining that the "documents in question are an *ex parte* motion (Doc. No. 44), *ex parte* notice of hearing (Doc. No. 45), *ex parte* letter (Doc. No. 46), and *ex parte* order (Doc. No. 47), all concerning Stiles' motion for change of counsel." Doc. No. 133, pp. 2-3. The order further explained:

> Additionally, docket numbers 44-47 were originally *ex parte* because they concerned the status of Stiles's relationship with his attorney, which was subject to attorney-client privilege. Stiles has now put those documents, along with his relationship with his former attorney, directly in issue in his § 2255 motion. See Doc. No. 110. Accordingly, any attorney-client privilege related to Stiles's allegations is waived. See Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974); see also United States v. Davis, 583 F.3d 1081, 1090 (8th Cir. 2009).

Id. at 2. The Court then released and disclosed copies of the documents in docket numbers 44-47 and an unrestricted docket sheet to the United States and Stiles for use in this § 2255 proceeding. Id. Accordingly, as explained above, Stiles's letters and motions were not deleted, and in fact, he was provided copies and an unrestricted docket sheet showing the same.

Furthermore, docket number 46 is a letter from Stiles to Judge Senechal, stating, "Writing this letter to say that I'm ok with Christopher Landcaster being my Lawyer. Sorry for the misunderstanding." Doc. No. 46. After receiving this letter, the Court found as moot Stiles's previous *ex parte* motion for new counsel. Doc. No. 47. Moreover, Stiles failed to raise any dissatisfaction with his counsel (who represented him at both the waiver and indictment and

change of plea hearing and at sentencing). To the contrary, Stiles represented to the Court that he was satisfied with his representation. Doc. No. 126, p. 7; Doc. No. 127, p. 5. And it is well-established that a defendant's statements while under oath carry a strong presumption of truthfulness. United States v. Green, 521 F.3d 929, 931 (8th Cir. 2008); United States v. Ledezma-Rodriquez, 423 F.3d 830, 836 (8th Cir. 2005); United States v. White, 610 F. App'x 579, 582 (8th Cir. 2015). So, Stiles's claim that the Court deleted his letter and motion for change of counsel and denied an inquiry into his denial of counsel claim is without merit, is contradicted by the record, and provides no basis for relief.

### B.     Ineffective Assistance of Counsel

The next two grounds both pertain to allegations of ineffective assistance of counsel. To obtain relief on an ineffective assistance of counsel claim, a petitioner must satisfy the two-prong test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). For the first prong, a petitioner must establish constitutionally deficient representation, meaning counsel's performance fell below an objective standard of reasonableness. Meza-Lopez v. United States, 929 F.3d 1041, 1044 (8th Cir. 2019) (citing Strickland, 466 U.S. at 687-88). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Courts view the representation from counsel's perspective at the time of the alleged error to avoid the effects of hindsight and second-guessing. Kemp v. Kelley, 924 F.3d 489, 500 (8th Cir. 2019) (citing Strickland, 466 U.S. at 489). A petitioner must overcome a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also Camacho v. Kelley, 888 F.3d 389, 394 (8th Cir. 2018). Strategic decisions

made after a thorough investigation of the law and facts are virtually unchallengeable. United States v. Orr, 636 F.3d 944, 950 (8th Cir. 2011).

To satisfy the second prong, a petitioner must demonstrate that prejudice resulted from the deficient representation. Strickland, 466 U.S. at 687. To do so, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Adejumo v. United States, 908 F.3d 357, 361 (8th Cir. 2018) (quoting Strickland, 466 U.S. at 694). A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003) (quoting Strickland, 466 U.S. at 694). When evaluating the probability of a different result, courts view the totality of the evidence to gauge the effect of the error. Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006) (citing Strickland, 466 U.S. at 495). Where a petitioner raises multiple ineffective assistance of counsel claims, each claim must be examined independently rather than collectively. Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002) (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)). Cumulative error will not justify habeas relief. Middleton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006).

Stiles identifies two alleged errors by his former counsel: (1) failing to mount an aggressive adversarial challenge to the indictment; and (2) misrepresenting the consequences of his plea. Doc. No. 110.

### 1. Failing to Challenge the Indictment

As to Stiles's claim that his former attorney failed to mount an aggressive challenge to the indictment, he asserts his former counsel "refused" to challenge the indictment with a motion to dismiss and also "refused" to raise Fourth Amendment violations via a motion to suppress. Id. The United States notes Stiles's argument is contradicted by the record, and the Court agrees.

On this record, and given the extensive investigation and plea agreement, there is little logic to Stiles's argument that counsel failed to challenge the indictment. In fact, given that Stiles ultimately pleaded guilty to the information, and not the indictment, there is much evidence to suggest that Stiles's counsel did properly challenge the indictment. Certainly, there is no evidence that Stiles's counsel's performance fell below an objective standard of reasonableness. To the contrary, the record reflects a diligent and meticulous defense, that worked to Stiles's benefit. Recall that under the indictment, Stiles was facing a mandatory minimum sentence of 20 years; however, under the information, there was a statutory maximum of 20 years and no mandatory minimum. There are simply no facts in this record to suggest that counsel's performance fell below an objective standard of reasonableness, and as a result, Stiles cannot satisfy the first prong of Strickland on this claim.

But even assuming *arguendo* that counsel's performance was deficient (which it is was not),[5] Stiles has failed to present any evidence that he was prejudiced. To the contrary, as highlighted by the United States, even if the indictment was dismissed, the United States "would have been within its authority and ability to bring the matter back to the grand jury for a Superseding Indictment on the Distribution of a Controlled Substance charge alleged in the Information" and was not "simply going to fold its tent and go home." Doc. No. 141, p. 19. Indeed, the Court fully explained that the United States could indict Stiles on the charges in the information during the waiver and plea hearing. Doc. No. 126, pp. 13-14. And at the time, Stiles confirmed he understood that a grand jury may or may not indict him. Id. Moreover, Stiles's allegations lack any factual details as to how a successful motion to dismiss or suppress would have changed the

---

[5] Again, to the contrary, the record illustrates vigorous and extensive investigation and negotiation by Stiles's former attorney that resulted in Stiles not being charged with (and not pleading guilty to) the overdose and death of J.T.

ultimate outcome of his case. Put simply, on these facts, Stiles cannot demonstrate prejudice. Accordingly, this claim is without merit, contradicted by the record, and provides no basis for relief under Strickland.

### 2. Misrepresenting the Consequences of His Plea

Stiles next argues that his former attorney misrepresented the consequences of his plea. Even if true, he would not be entitled to relief because "[i]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." Walker v. United States, 810 F.3d 568, 578 (8th Cir. 2016) (internal citation and quotation omitted). Indeed, as well-stated by the Eighth Circuit:

> This case closely resembles Regenos, where we held that a petitioner's claim of ineffective assistance of counsel failed "because she cannot prove that the result of the plea negotiations would have been different had her counsel performed adequately." 405 F.3d at 693. Because allegedly omitted information had been "fully supplied to [the petitioner] throughout the plea process" and the district court had "explicitly informed" the petitioner of the potentially applicable sentences during the plea colloquy, the Regenos petitioner failed to prove Strickland prejudice. Here, the government and the district court informed Tinajero–Ortiz multiple times that his statutory sentencing range was between five and forty years and that his advisory guideline range could be different from what his attorney had predicted. Tinajero–Ortiz has thus failed to meet the burden of proving Strickland prejudice.

Tinajero-Ortiz, 635 F.3d at 1105.

Here, the Court advised Stiles of the maximum sentence he faced by pleading guilty. Doc. No. 126, p. 17. This information was also part of the plea agreement. Doc. No. 73 ¶ 7. Further, Stiles indicated on the record that he understood the maximum sentence prior to pleading guilty. Doc. No. 126, p. 17. In short, even if his counsel advised him deficiently regarding his potential sentence (which seems quite unlikely), this error was rectified by the Court's accurate

communication of the potential sentence, and Stiles suffered no prejudice. See e.g., Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997) (Section 2255 petitioner could not show prejudice on claim that counsel improperly advised him about the length of his potential sentence, because, "[r]egardless of what his trial counsel advised him concerning the length of the potential sentences that might result from his guilty pleas, the record demonstrates that the trial judge clearly explained the potential maximum sentence to [the petitioner] at the plea proceeding."). As a result, this claim also fails under Strickland.

## C. Evidentiary Hearing

Section 2255(b) requires an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." No hearing is necessary "if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003).

After careful review of the file and all of Stiles's substantive § 2255 claims, the record decisively refutes each claim presented by him. Additionally, and as discussed above, Stiles offers largely conclusory allegations and few statements of fact in support of his § 2255 claims and motion. As such, dismissal without an evidentiary hearing is warranted. See Calkins v. United States, 795 F.3d 896, 900 (8th Cir. 2015).

## D. Motion to Appoint Counsel

Stiles also motioned the Court to appoint him counsel. There is neither a constitutional right nor statutory right to counsel in habeas proceedings. See Morris v. Dormire, 217 F.3d 556, 558 (8th Cir. 2000); United States v. Craycraft, 167 F.3d 451, 455 (8th Cir. 1999); Blair v.

11

Armontrout, 916 F.2d 1310, 1332 (8th Cir. 1990); see also Boyd v. Groose, 4 F.3d 669, 671 (8th Cir. 1993) (explaining that a habeas corpus proceeding is a civil proceeding to which the Sixth Amendment right to counsel afforded for criminal proceedings does not apply). The Court may nevertheless appoint counsel for a habeas petitioner at any time if it finds that the "the interests of justice so require." See 18 U.S.C. § 3006A(a)(2). If a court conducts an evidentiary hearing on the motion, the interests of justice require that the movant be appointed counsel. See Rule 8(c), Rules Governing Section 2255 Cases in the United States District Courts; see also Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994). "If no evidentiary hearing is necessary, the appointment of counsel is discretionary." Id.

When exercising its discretion, a court should determine whether, given the particular circumstances of the case, "the appointment of counsel would benefit the petitioner and the court to such an extent that 'the interests of justice so require' it." Id. (citing 18 U.S.C. § 3006A(a)(2) and Battle v. Armontrout, 902 F.2d 701, 702 (8th Cir. 1990)). Thus, a court should consider several relevant factors, including the factual complexity of the case and the movant's ability to investigate and present his claim. See Abdullah, 18 F.3d at 573; see also Battle, 902 F.2d at 702; Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

Stiles's motion for counsel reads, in its entirety, "Plaintiff, Robert C. Stiles, pro se, hereby moves this Honorable Court under 28 USCA 2255(g), for appointment of counsel to prepare and file plaintiff's first amended 28 USCA 2255 petition." Doc. No. 111. Without any description of his claims, Stiles has not demonstrated that the facts of his case are particularly complex or that he is unable to present his factual clams.  Accordingly, in the exercise of its broad discretion, the Court finds that the interests of justice do not require the appointment of counsel and denies the motion for appointment of counsel.

IV.     **CONCLUSION**

The Court has reviewed the record, the parties' filings, and the relevant legal authority. Stiles's allegations, even when taken as true, are insufficient to support his claim, contradicted by the record, inherently incredible, or are conclusions rather than statements of fact. As a result, his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 110) is **DENIED**. This matter is **DISMISSED** without an evidentiary hearing. The Court also **DENIES** the related motion for hearing and to appoint counsel (Doc. No. 111).

The Court certifies that an appeal from the denial of the motion may not be taken in forma pauperis because such an appeal would be frivolous and cannot be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962). Based upon the entire record, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings. Therefore, the Court will not issue a certificate of appealability. Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983); Tiedeman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997). If Stiles desires further review of his motion, he may request a certificate of appealability from a circuit judge of the Eighth Circuit Court of Appeals.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 24th day of January, 2023.

>                      */s/ Peter D. Welte*
>                     Peter D. Welte, Chief Judge
>                     United States District Court